**George Reames ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–87–002–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 16, 1988.

Mary B. Hennessy, George McCall Secrest, Jr., Houston, for appellant.

John B. Holmes, Jr., Cathleen Herasimchuk, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, George Reames Rogers, appeals his felony conviction for the offense of robbery. TEX.PENAL CODE § 29.02(a)(2) (Vernon 1974). Appellant pled "not guilty" to a jury which found him guilty as charged in the indictment. The court found the State's enhancement allegations "true" and assessed punishment at seventy-five years' confinement in the Texas Department of Corrections. We affirm.

Appellant brings five points of error. The first is a challenge to the sufficiency of the evidence based on a purported fatal variance between the State's allegations and its proof. In points of error two through four appellant contends the trial court committed reversible error by permitting the prosecutor to bolster the complainant's identification testimony, and by overruling his objections to police witnesses' testimony as suggestive of extraneous offenses. In his fifth point of error appellant argues the prosecutor's cross-examination of an alibi witness concerning her felony probation amounted to reversible error.

Viewed in the light most favorable to the verdict, the record shows that on June 16, 1986, around 2:30 p.m., appellant walked into the 7701 Bellfort branch of United Savings Bank in Houston. The complaining witness, Ruby Simpson, worked there as a teller. Appellant took a place in a waiting line. Ms. Simpson testified that after she finished assisting a previous customer, appellant, who was next in line, came up to the counter at her station, handed her a folded brown paper sack, and said in a low, serious tone "This is a robbery." Simpson testified that after she took the bag she noticed that appellant placed his hand on his side. She said she feared he had a gun and was very much afraid. After she put the contents of her top drawer till in the bag, appellant, who still kept his hand on his side, demanded that Simpson give him the contents of her second drawer as well. Simpson testified that the teller stations on either side of her were vacant and that she made an unsuccessful attempt to get the attention of a teller further down the counter while she worked at emptying the second drawer. She stopped trying when appellant told her to hurry. He used the same low, stern tone of voice, and still kept his hand near his side. After Simpson placed a total of $2,864 in the bag, appellant left the bank.

In his first point of error, appellant maintains that the State's evidence is insufficient as a matter of law to establish the allegations of the indictment, and that his conviction must therefore be reversed and an order of acquittal entered. The indictment charged appellant with robbery in the following language:

> while in the course of committing theft of property owned by RUBY SIMPSON, hereafter styled the Complainant, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place the Complainant in fear of imminent bodily injury and death, *by placing his hands in his pocket as if he had a firearm* (emphasis added).

With the exception of the italicized language, the indictment tracks the elements of TEX.PENAL CODE § 29.02(a)(2). Appellant bases his point of error on the italicized excerpt. He maintains the State was required to prove that allegation beyond a reasonable doubt because it amounted to a description of an essential element of the offense. We first note that it was not necessary to include the challenged language in the indictment in order to charge appellant with the offense of robbery. *See* § 29.02(a)(2). While we agree that the State was required to prove the italicized

allegation, we disagree with appellant's contention that the State failed to do so.

■ If the State's proof falls short of its allegations, reversal of a conviction due to insufficient evidence can result. *See Wray v. State,* 711 S.W.2d 631, 633 (Tex.Crim. App.1986) (en banc). *Accord, Johnson v. State,* 673 S.W.2d 190, 194–95 (Tex.Crim. App.1984, en banc) (State must prove its allegations in the indictment beyond a reasonable doubt); *Doyle v. State,* 661 S.W.2d 726, 729 (Tex.Crim.App.1983) (per curiam, en banc) (same). However, the State need not prove indictment allegations which amount to mere surplussage, *i.e.,* unnecessary words or allegations. *Wray,* 711 S.W. 2d at 633; *Upchurch v. State,* 703 S.W.2d 638, 640 (Tex.Crim.App.1985) (en banc). The determining test of the State's burden to prove unnecessary allegations in the indictment is whether the challenged language *describes* an essential element of the offense charged. *Wray,* 711 S.W.2d at 633; *Upchurch,* 703 S.W.2d at 640. If it does, the language is not surplussage and the State must prove the allegation, in addition to the statutory elements of the offense, beyond a reasonable doubt. *Id.; Matthias v. State,* 695 S.W.2d 736, 739 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd).

■ Threatening or placing the complainant in fear is an essential element of TEX.PENAL CODE § 29.02(a)(2) (robbery "by threat"). *See Robinson v. State,* 553 S.W. 2d 371, 373 (Tex.Crim.App.1977); *Harper v. State,* 675 S.W.2d 534, 535 (Tex.App.— Houston [14th Dist.] 1984, pet. ref'd). Here the State alleged that appellant's "placing his hands in his pocket as if he had a firearm" was his method of threatening Ms. Simpson and placing her in fear of serious injury or death. We hold that because the allegation described appellant's threatening or placing Ms. Simpson in fear, an essential element of the offense, the State carried the burden to prove that allegation beyond a reasonable doubt. *Wray,* 711 S.W.2d at 633; *Upchurch,* 703 S.W.2d at 640; *Johnson,* 673 S.W.2d at 194–95; *Doyle,* 661 S.W.2d at 729. We now turn to

the question of the sufficiency of the State's proof to meet its burden.

■ This court evaluates challenges to the sufficiency of both circumstantial and direct evidence by reviewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim. App.1984) (en banc). The same standard applies to review of evidence supporting descriptive allegations in the indictment. *See Horne v. State,* 749 S.W.2d 74, 76 (Tex.Crim.App.1988) (en banc), *reversing* 693 S.W.2d 653 (Tex.App.—San Antonio 1985) (failure to apply proper standard to descriptive allegation); *see also, Johnson,* 673 S.W.2d at 194–95 (State must prove its allegations in the indictment beyond a reasonable doubt). Here, the State's proving its allegation, that appellant used his hand to so intimidate Ms. Simpson that she believed he had a gun, depended on the jury's assessment of her direct evidence that he was the perpetrator, other circumstantial evidence, and the credibility of witnesses. In assessing circumstantial evidence, this court must sustain the conviction if the circumstantial evidence excludes every other reasonable hypothesis except appellant's guilt. *Harris v. State,* 727 S.W.2d 537, 540 (Tex.Crim.App. 1987); *Johnson v. State,* 673 S.W.2d at 195. Moreover, if there is any evidence which establishes guilt beyond a reasonable doubt, this court cannot reverse the conviction based on a lack of sufficient evidence, since to do so would be inconsistent with reviewing the evidence in the light most favorable to the jury's verdict. *See Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim. App., en banc), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); *Horne,* at 76, citing *Combs v. State,* 643 S.W.2d 709, 716 (Tex.Crim.App.1982) (en banc).

Appellant insists the record fails to establish sufficient evidence to sustain his conviction because the complaining wit-

ness, Ms. Simpson, never affirmatively stated that he placed "his hands in his pocket as if he had a firearm." We hold the record legally sufficient evidence to support the jury's verdict.

During cross-examination, appellant's trial counsel asked the investigating police officer, John Dickinson, if Ms. Simpson had ever told him that the appellant placed his right hand on the counter. Dickinson responded that he couldn't remember, but added that Simpson did tell him that appellant "just told her this is a robbery, put his hands in his pants pocket and she thought that he had a pistol." Appellant's counsel failed to object to Dickinson's non-responsive hearsay answer. With the advent of the Texas Rules of Criminal Evidence, predated by the decision of the Court of Criminal Appeals in *Chambers v. State*, 711 S.W. 2d 240 (Tex.Crim.App.1986) (opinion on State's motion for rehearing, en banc), unobjected to hearsay not only has probative value but can serve as the basis for sustaining a verdict. *See* TEX.R.CRIM.EVID. 802; *Chambers*, 711 S.W.2d at 247. *See also, Harris v. State*, 727 S.W.2d 537, 541 (Tex.Crim.App.1987) (hearsay has probative value and can be used in determining the sufficiency of the evidence to support the conviction).

Appellant correctly states that Simpson never actually used the words "placing his hand in his pocket as if he had a gun" to describe appellant's actions. Yet her testimony does not exclude that conclusion. Appellant focuses on Simpson's repeated statements that he kept his hand "on his side." She also clearly stated that it appeared there was "something pointed" in appellant's shirt and that she thought he had a gun, although she admitted she could not be certain. While her statements are not direct assertions that appellant placed his hand in his pocket so that she would believe he had a gun, they do not exclude that action.

The record also establishes that not only Simpson, but the prosecutor and appellant's trial counsel as well, each used gestures or demonstrations to further substantiate the issue of the position of appellant's

hands during the robbery. Texas law has long permitted courtroom demonstrations aimed at clarifying a witness's testimony. *See Lewis v. State*, 486 S.W.2d 104, 106 (Tex.Crim.App.1972). The prosecutor questioned Simpson, in part, as follows:

Q (PROSECUTOR): Was he facing directly in front of you or on the side or was he directly in front of you and did he have his hand *on his right side?*

A (SIMPSON): *Right there. Like that.* (emphasis added).

Appellant's trial counsel cross-examined Simpson, in part, as follows:

Q (DEFENSE COUNSEL): And your testimony is after doing that with [handing her] the sack he kept his hand *here?*

A (SIMPSON): That's correct.

. . . . .

Q: ... Is *this* how he kept his hands or—

A: *On that order.*

Q: Were his hands *there?*

A: Yes sir.

Q: Did you see anything in his pants that could have been a gun or weapon?

A: The way it looked to me there was something pointed in his shirt.

Q: In his shirt *here?*

A: Inside of his shirt around—his hands would have been *here* (emphasis added).

Although each attorney failed to ask that the record reflect the details of the demonstration indicated by the foregoing excerpts, we are of the opinion that we must view those excerpts as supporting the jury's verdict. *Gaona v. State*, 733 S.W.2d 611, 613 & n. 1 (Tex.App.—Corpus Christi 1987, no pet.), was an involuntary manslaughter case in which a witness used the expressions "like that" or "like this" to describe how the accused held a gun. In *Gaona*, the record also failed to explain the gestures accompanying the witness's words. Yet the court indicated it was obliged to view the witness's words as supporting the jury's verdict because they could have a significant impact on the jury's assessment of the recklessness of the accused's conduct. *Gaona*, 733 S.W.2d at 613 n. 1. The undescribed testimonial

gestures in the instant case likewise could have, and undoubtedly did have, a significant impact on the jury's assessment of exactly how appellant held his hand during the robbery. In addition to noting that appellant failed to request that the record reflect the substance of the gestures or demonstrations, we also note that he failed to object to them. Because this court must evaluate challenges to the sufficiency of the evidence by reviewing the record in the light most favorable to the verdict, we hold the testimony excerpted above, which indicates that not one but several demonstrations took place, supports the jury's verdict. *See* Tex.R.App.P. 50(d).

Appellant places significant emphasis on his cross-examination of Ms. Simpson. He suggests her testimony establishes that his hands were *outside* his shirt. We disagree. Following the statement excerpted above, "his hands would have been *here,*" with its accompanying undescribed gesture, appellant's counsel asked Simpson the following question: "Are you saying that his hands was [sic] inside his shirt or outside the shirt?" Simpson then responded that "it" was "outside" appellant's shirt. This court has no way of knowing the substance of the gesture Simpson made when she described appellant's hand as "here." Therefore, we may not view her statement which followed the gesture as conflicting with the jury's verdict. *Gaona,* 733 S.W.2d at 613 n. 1. Appellant's hand may well have been outside his shirt and yet in a pocket. We fail to find irreconcilable conflict between Simpson's response and Officer Dickinson's statement that he placed "his hands in his pocket as if he had a gun." Nor does her statement that she thought appellant had "something pointed in his *shirt*" conflict fatally with Officer Dickinson's reporting that Simpson said appellant "put his hands in his *pants* pocket." The indictment and the court's charge alleged only that appellant placed his hand in his pocket, without specifying a specific article of clothing. The jury was therefore free to determine which item of clothing's pocket appellant used to create the appearance that he had a gun.

We hold that while inconsistencies and ambiguities in the witnesses' testimony may have occurred in this case, they do not amount to such contradictions as to preclude the jury's concluding that appellant did in fact place "his hand in his pocket as if he had a gun." It is exclusively the province of the jury to judge the facts, assess the credibility of the witnesses, weigh their testimony, and resolve conflicts in the evidence by accepting or rejecting evidence in whole or in part. Tex.Code Crim.Proc.Ann. art. 38.04 (Vernon 1979); *Losada v. State,* 721 S.W.2d 305, 309 (Tex. Crim.App.1986) (en banc). Conflicts in the evidence will not require reversal unless there is insufficient credible evidence on which the jury could have based its verdict. *Losada,* 721 S.W.2d at 309. We hold that Simpson's and Dickinson's testimony together provided sufficient credible evidence from which the jury could conclude beyond a reasonable doubt that appellant placed his hand in his pockets as if he had a gun. We overrule appellant's first point of error.

 In his second point of error appellant argues the State improperly bolstered the testimony of Ms. Simpson, the complaining witness. Appellant maintains that because he did not impeach Ms. Simpson's prior testimony identifying him as her assailant, the testimony of Houston police officer Steven Ruteshouser amounted to improper bolstering. He argues his conviction must be reversed because the court's error in overruling his objection to the testimony was harmful beyond a reasonable doubt. We disagree.

 Inadmissible bolstering occurs when a party attempts to introduce evidence to add credence or weight to its own earlier presented evidence which the opposing party has not impeached. *McKay v. State,* 707 S.W.2d 23, 33 (Tex.Crim.App. 1985) (en banc), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Sledge v. State,* 686 S.W.2d 127, 129 (Tex. Crim.App.1984) (en banc); *Pless v. State,* 576 S.W.2d 83, 84 (Tex.Crim.App. [Panel Op.] 1978). As applied to the issue of the identity of the accused, corroborating evidence which violates the rule can result in

an order for a new trial by an appellate court. *Sledge*, 686 S.W.2d at 129; *Lyons v. State*, 388 S.W.2d 950, 950–51 (Tex.Crim. App.1965). In *Lyons*, the Court of Criminal Appeals set out the bolstering rule as it applies to the issue of identification: although a witness who has identified her assailant at the trial could testify to having identified him pre-trial, others may not bolster the fact of the witness's pre-trial identification of the assailant absent impeachment of the witness. *Lyons*, 388 S.W.2d at 950–51; *accord, Landry v. State*, 706 S.W. 2d 105, 108 (Tex.Crim.App.1985, en banc), *cert. denied*, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986); *Sledge*, 686 S.W.2d at 129 (same, quoting *Lyons* ). Once impeachment occurs, the third party's corroborating testimony is admissible as proper rehabilitation. *Sledge*, 686 S.W.2d at 129. In order for the *Lyons* rule to apply however, an attestation concerning a pre-trial *identification of the accused* must have occurred. *See Landry*, 706 S.W.2d at 109; *Bird v. State*, 692 S.W.2d 65, 71 (Tex.Crim. App.1985, en banc), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). We conclude the trial court properly overruled appellant's objections to Officer Ruteshouser's testimony.

Prior to Simpson's identifying appellant in court, the trial court removed the jury and allowed the prosecutor and appellant's trial counsel to conduct a voir dire examination of Simpson concerning her identification of appellant. Appellant's trial counsel conducted a lengthy cross-examination after Simpson identified appellant as her assailant outside the jury's presence. During that cross-examination she identified the photo spread, which was marked as Defendant's Exhibit One. She did not state that appellant's picture was in the photo spread or that he was in the line-up.

After the jury returned, Simpson identified the appellant as her assailant in their presence. She then testified she took part in two pre-trial procedures, a photo spread and a line-up. She answered several questions concerning the administrative details of the procedures. She stated the police never told her there was a suspect in the photo spread and that in both the photo spread and the lineup, the individuals were all white males. Just as she did outside the jury's presence, Simpson testified that she identified the fourth *photograph* from the photo spread and the third *person* in the line-up. Appellant's trial counsel did not object to this testimony. During cross-examination he thoroughly questioned Simpson concerning both the photo spread and line-up procedures but did not show her the photo spread. He asked her the details of the description she gave the police and impeached that testimony to some extent by establishing that although she had not seen the police offense report, she and the prosecutor had reviewed her testimony concerning the description she gave the police. After he attempted to impeach her identification testimony by asking her whether her assailant hid his face or was wearing a hat, he succeeded in establishing that she was "only sixty percent certain" of the photograph she identified from the photo spread. On re-direct, Simpson explained she was "only sixty percent certain" because the photograph depicted a much younger person.

Because the photo spread was not in evidence when the prosecutor first questioned Simpson before the jury, his questions at that point in the trial amounted to a testing of her memory of the details of the pre-trial procedures. Simpson never stated that *appellant's* photograph was in the fourth position or that *he* was in the third position in the line-up. Therefore, her testimony did not amount to an assertion that she identified appellant pre-trial. *Landry*, 706 S.W.2d at 109; *compare Wilhoit v. State*, 638 S.W.2d 489, 495 (Tex. Crim.App.1982) (rejecting State's "lack of identification" argument where, prior to stating that his wife selected a photo from a spread, witness, who also viewed the spread, indicated the *accused's* picture was among the photos). Because Simpson did not assert that she identified *appellant* pre-trial, the *Lyons* rule does not apply to her testimony.

Nor did Officer Ruteshouser attest that a pre-trial identification of *appellant* occurred. Although Ruteshouser identified

the photo spread before the jury, it was not introduced into evidence until after the State put on its case. In addition to testifying to other details of his pre-trial investigation, Ruteshouser did confirm that Simpson picked out the fourth picture from the photo spread and the third person from a line-up. As was the case during Simpson's own testimony, he did not assert that she identified the appellant. *See Landry,* 706 S.W.2d at 109; *Bird v. State,* 692 S.W.2d at 71. Because neither Simpson nor Ruteshouser reported her having identified appellant pre-trial, Ruteshouser's testimony did not amount to improper bolstering of an identification witness. *Landry,* 706 S.W.2d at 109. At that point in the trial, without the photo spread in evidence, Ruteshouser's testimony was merely corroborative of Simpson's accuracy in remembering the position numbers of the photographs in the spread and the persons in the line-up. *See Landry,* 706 S.W.2d at 109. Consequently, although Ruteshouser's testimony was cumulative, it added nothing to the jury's assessment of the credibility of Simpson's in-court identification of appellant as her assailant. *Id.*

Appellant insists Ruteshouser's testimony created an inference that he was the assailant. The Court of Criminal Appeals rejected a similar argument in *Landry,* where, we have noted, it also concluded the officer had not attested to a pre-trial identification of the accused. We first note that the *Landry* trial court admitted the photo spread exhibit *during* the testimony of the police officer who witnessed the photo spread and line-up. 706 S.W.2d at 109. Although it recognized the possibility that the jury might have inferred that an identification had occurred, the Court of Criminal Appeals nonetheless found any error in admitting the officer's testimony harmless beyond a reasonable doubt. *Id.,* 706 S.W.2d at 109. Yet, in the instant case, there was not even a close proximity between Ruteshouser's testimony and admission of the photo spread; the latter was not admitted into evidence until appellant's case in chief. Appellant here has failed to establish that admission of Officer Ruteshouser's testimony was harmful beyond a reasonable

doubt. *Landry v. State,* 706 S.W.2d at 108; *Davis v. State,* 636 S.W.2d 197 (Tex. Crim.App.1982) (en banc, per curiam). For this reason we also reject appellant's suggestion that the bolstering rule required the prosecutor to cease rehabilitating Simpson after she explained why she was only sixty percent certain when she selected the fourth photograph.

■ Assuming, for purposes of analysis only, that Simpson's and Ruteshouser's testimony did amount to assertions that she directly identified *appellant* during the pre-trial procedures, we also hold that by establishing that Simpson was only sixty percent certain in selecting the fourth photograph from the photo spread, appellant's trial counsel impeached Simpson's in-court identification to a degree sufficient to render Ruteshouser's testimony admissible under *Lyons.* As Presiding Judge Onion noted in *Wilhoit,* exceptions have so eroded the *Lyons* rule that it is futile to invoke it if an accused even attempts to impeach identification testimony. 638 S.W.2d at 495. Because appellant impeached the certainty of Simpson's in-court identification by bringing up the issue of the photo spread, the court properly permitted the prosecutor to solicit Ruteshouser's testimony concerning the photo spread. As we have indicated, that testimony merely corroborated Simpson's accuracy in remembering the details of the pre-trial procedures.

The State based its response to appellant's second point of error on TEX.R.CRIM. EVID. 801(e)(1)(C). Rule 801(e)(1)(C) is part of the New Texas Rules of Criminal Evidence which the Court of Criminal Appeals adopted on September 1, 1986, and which were in effect at the time of appellant's trial. The State maintains appellant's "bolstering" objection to Officer Ruteshouser's testimony is no longer valid in view of TEX.R.CRIM.EVID. 801(e)(1)(C). The State submits that such statements are non-hearsay substantive evidence under Rule 801(e)(1)(C) because the State satisfied the prerequisites to their admissibility, namely, presenting Ms. Simpson as a trial witness subject to cross-examination. While the State's argument has definite merit, its ar-

gument is not controlling in view of our holding that the trial court properly admitted Officer Ruteshouser's testimony, either as harmless cumulative evidence of a pretrial procedure, or within the "prior impeachment" exception to the bolstering rule.

We conclude the trial court properly overruled appellant's bolstering objections. Accordingly, the second point of error is overruled.

In his third and fourth points of error, appellant contends the trial court's overruling his objections to parts of two Houston police officers' testimony constituted reversible error. He argues their testimony suggested appellant's prior criminal record.

The third point of error concerns Officer Ruteshouser's testimony. The prosecutor established that Ruteshouser conferred by telephone with Officer Gerald Rainer, the officer who reviewed appellant's offense report prior to Ruteshouser's conducting the photo spread and line-up. Appellant complains of the italicized language in the following colloquy:

Q (PROSECUTOR): ... Based on your conversations with Officer Rainer, did you have occasion to have a suspect?

A (RUTESHOUSER): Yes, sir, I did.

Q: All right. And following that conversation what did you do in terms of a photo spread?

A: I based it on the suspect developed in that conversation and called and ordered *mug photos, HPD file photos of the defendant* (emphasis added).

Appellant immediately requested a bench conference. After objecting that Ruteshouser's reference to appellant's problems with HPD was prejudicial, non-responsive, improper, and suggestive of a prior extraneous offense, appellant's trial counsel moved the court to instruct the jury to disregard Ruteshouser's answer. The court overruled the objection and gave no instruction to disregard. Conceding that the court should have sustained appellant's multifarious objection, the State maintains the court's error in failing to instruct the jury to disregard Ruteshouser's answer did not amount to reversible error.

■ If erroneously admitted evidence is harmless beyond a reasonable doubt, this court may not reverse appellant's conviction. *Becknell v. State*, 720 S.W.2d 526, 530 (Tex.Crim.App. [Panel Op.] 1986); *Beck v. State*, 712 S.W.2d 745, 747 (Tex.Crim. App.1986) (en banc). Based on the facts and circumstances of the individual case as perceived by the average juror, there must be a reasonable possibility that the improperly admitted evidence contributed to the jury's decision to convict. *Beck*, 712 S.W. 2d at 747, citing *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed. 2d 705 (1967); *Maynard v. State*, 685 S.W.2d 60, 67 (Tex.Crim.App.1985) (en banc); *Lacca v. State*, 696 S.W.2d 645, 647 (Tex.App.—Houston [14th Dist.]), aff'd 641 S.W.2d 543 (Tex.Crim.App.1982). *See also*, *Bird*, 692 S.W.2d at 70, quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972) (reversal not required unless exclusion of improperly admitted evidence would render State's case less persuasive); Tex.R.App.P. 81(b)(2) (trial court error requires reversal of criminal case unless appellate court determines beyond a reasonable doubt that error contributed to neither conviction nor punishment). The foregoing test applies to allegations that improperly admitted evidence suggested extraneous transactions. *See Lewis v. State*, 676 S.W.2d 136, 141 (Tex.Crim.App. [Panel Op.] 1984); *see also, Lacca*, 696 S.W.2d at 647 (applying test). We conclude Ruteshouser's non-responsive reference to "mug photos, HPD file photos of the defendant" was harmless beyond a reasonable doubt.

The essence of appellant's complaint is that Ruteshouser's offending words suggested that appellant either had a criminal record or had been arrested, and so adversely influenced the jury that they convicted him. We disagree. This is not a case where the State sought to admit evidence of a prior arrest through an uncropped police file photograph. *Compare Richardson v. State*, 536 S.W.2d 221 (Tex. Crim.App.1976) (reversing conviction). Rather, the prosecutor initiated questioning concerning the photo spread in response to

an issue raised during appellant's cross-examination of Simpson. Although Ruteshouser used the term "mug photos," he qualified those words by adding "HPD file photos." There was no additional indication that the photo was from HPD *arrest* files. *Compare West v. State*, 511 S.W.2d 502, 505 (Tex.Crim.App.1974) (although it was improper to permit police to testify to victims' examining mug book containing only photos of men arrested for indecent exposure, instruction to disregard cured error).

Ruteshouser used the offending language only once and in a manner that was non-responsive to the prosecutor's question. Appellant's counsel lodged his "extraneous offense" objection at the bench, and thus did not draw the jury's attention to that issue. Indeed, the record reflects that the trial court did not even hear Ruteshouser's "mug shot" reference. *Cf., Lacca*, 696 S.W.2d at 647 (no real evidence suggesting prior extraneous offense reached jury). Moreover, the record indicates that appellant abandoned the "extraneous offense" objection when the bench conference concluded. Immediately following the bench conference, the prosecutor returned to questioning Ruteshouser concerning the photo spread. As we indicated in our analysis of appellant's second point of error, Ruteshouser testified he put together a spread containing six photos. He gave no indication that appellant's picture was among them. Thereafter, over appellant's *bolstering* objections, Ruteshouser identified the photo spread exhibit, indicated it contained six photos of white males, and testified he showed it to Simpson who picked out the fourth photograph. The prosecutor did not then seek to admit the photo spread.

No reported Texas case has addressed the issue of the prejudicial effect of a non-responsive isolated reference to "mug shots" or "file photos." However, several federal appellate courts have concluded that in the absence of accompanying evidence suggesting past criminal activity, no reversible error resulted from a trial court's overruling an accused's objections to such testimony. *See, e.g., Holified v.*

*Davis*, 662 F.2d 710, 711 (11th Cir.1981), *cert. denied*, 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 (1982) (no prejudicial error resulted from references to "mug" shots and books); *United States ex rel. Johnson v. Hatrack*, 417 F.Supp. 316, 324 (D.N.J. 1976), *aff'd*, 564 F.2d 90 (3d Cir.1977), *cert. denied* 435 U.S. 906, 98 S.Ct. 1454, 55 L.Ed. 2d 497 (1978) (habeas corpus proceeding; police officer's revealing that photographs used in photo line-up originated in police files provided insufficient basis for petitioner's claim that trial was fundamentally unfair); *United States v. Dichiarinte*, 385 F.2d 333, 337 (7th Cir.1967), *cert. denied*, 390 U.S. 945, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968) (notwithstanding implication of "unfavorable history," no reversal required where federal agents attested to selecting accused's photograph from files of the Bureau of Narcotics). Similarly, in *United States v. Sanchez*, 449 F.2d 204, 207 (5th Cir.1971), *cert. denied*, 405 U.S. 925, 92 S.Ct. 973, 30 L.Ed.2d 798 (1972), the court relied on *Dichiarinte* and found no reversible error resulted from federal agent's testifying they knew of the defendant through government service and files. We find the reasoning of the foregoing cases supports our conclusion that no reversible error occurred in the instant case.

■ Appellant insists the trial court should have instructed the jury to disregard Ruteshouser's testifying to the origin of the photograph. *See Campos v. State*, 589 S.W.2d 424, 428 (Tex.Crim.App. [Panel Op.] 1979). We disagree. In *Lewis*, the trial court apparently also failed to instruct the jury to disregard. 676 S.W.2d at 141. Yet the Court of Criminal Appeals concluded the court's charge sufficiently diminished the prejudicial impact of the improperly admitted evidence. *Id.* In the case before us, the court instructed the jury that the fact of arrest, confinement or indictment does not give rise to an inference of guilt, and that the accused is presumed innocent. The trial court thereby cured the prejudicial effect, if any, of Ruteshouser's reference. *Id.; see also, Holified*, 662 F.2d at 711 (presumption of innocence instruction dissipates suggestion of

past criminal activity); *Dichiarinte,* 385 F.2d at 337 (jury "probably understands" multiplicity of possible explanations for Bureau of Narcotics' possession of accused's photograph, and considers presumption of innocence instruction).

On reviewing the record as a whole, we conclude Ruteshouser's random answer did not contribute significantly to the verdict. Rather, the jury convicted appellant because they found Ms. Simpson's testimony more believable than his alibi defense. We cannot say the State's case would be significantly less persuasive absent Ruteshouser's improper reference to "mug shots" and "HPD file photos." *Bird,* 692 S.W.2d at 70. The substantial evidence of appellant's guilt which Simpson offered further diminished the prejudicial impact, if any, of Ruteshouser's careless remarks. *See Lewis,* 676 S.W.2d at 141. There is no reasonable basis for appellant's assertion that Officer Ruteshouser's words would have so influenced an average jury as to contribute to a conviction. *Id.* at 141–42; *Beck,* 712 S.W.2d at 747; *Lacca,* 696 S.W.2d at 647; Tex.R.App.P. 81(b)(2); *Hatrack,* 417 F.Supp. at 324; *Dichiarinte,* 385 F.2d at 337; *Sanchez,* 449 F.2d at 207. Moreover, in view of the court's assessing punishment, there is likewise no basis on which to assert that Ruteshouser's testimony contributed to his sentence. Error, if any, in failing to instruct the jury to disregard that testimony was harmless beyond a reasonable doubt. *Becknell,* 720 S.W.2d at 530; *Beck,* 712 S.W.2d at 747. Appellant's third point of error is overruled.

In his fourth point of error appellant contends the trial court's failing to strike portions of Officer Rainer's testimony amounted to reversible error. Appellant maintains that Rainer's alluding to recognizing him based on an offense report was suggestive of extraneous offenses. During Rainer's direct testimony, he explained that his job in reviewing an offense report was to decide whether it presented "solvability factors" and whether investigation would be required, and if so, to initiate the investigation. Rainer stated he reviewed the offense report concerning the June 16, 1986 robbery of United Savings. When the prosecutor asked "Have you read the report and did you come up with any possible solutions to it?" the trial court overruled appellant's trial counsel's objection to the relevancy of the question. Appellant did not cross-examine Rainer and did not ask the court to strike the testimony he now complains of until after Rainer left the witness stand.

Appellant's "irrelevant" trial objection to Rainer's testimony was nothing more than a properly overruled general objection which fails to comport with his argument before this court. It therefore presents nothing for review. *Burdine v. State,* 719 S.W.2d 309, 319 (Tex.Crim.App. 1986, en banc), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Hoffart v. State,* 686 S.W.2d 259, 263 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd), *cert. denied,* 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 46 (1986). Moreover, by delaying the substance of his objection until Rainer left the witness stand, appellant failed to object in a timely manner and thereby waived any possible error in Rainer's testimony. *See Thompson v. State,* 691 S.W.2d 627, 635 (Tex.Crim.App.1984) (en banc); *Sullivan v. State,* 678 S.W.2d 162, 169 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986). The fourth point of error is overruled.

In his fifth point of error appellant argues the prosecutor's cross-examination of an alibi witness, his wife, amounted to reversible error because his questions inquired into the details of the felony offense for which she was on probation. We disagree.

Appellant's wife testified as an alibi witness for her husband. She established that on the morning of the robbery, appellant, her mother, and two character witnesses accompanied her to Harris County criminal district court where she received probation for delivery of marijuana. Appellant argues the prosecutor's impeachment of his wife improperly inquired into the specific facts of her offense. The prosecutor established that her offense was a felony, as was proper pursuant to Tex.R.Crim.Evid. 609(a). When the prosecutor attempted to further impeach appellant's wife, the court

sustained several of appellant's relevancy-based objections. In one instance the court granted appellant's request and instructed the jury to disregard a question. Appellant's sustained objections and his successful request for an instruction to disregard present nothing for review because such rulings are not adverse. *See Nethery v. State*, 692 S.W.2d 686, 701 (Tex.Crim.App. 1985, en banc), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Torres v. State*, 491 S.W.2d 126, 128 (Tex. Crim.App.1973). We will therefore review only those objections to the prosecutor's cross-examination which the trial court overruled.

The trial court overruled appellant's relevancy-based objections to the prosecutor's asking appellant's wife whether she remembered the penalty range for her offense, what amount of marijuana she pled guilty to possessing, and the location of her arrest. The record reflects that the prosecutor gained no new information from the foregoing questions. Appellant's wife responded that she did not remember the range of punishment and did not know the amount she pled guilty to possessing. Nor did she state a location in response to the last question. The trial court's overruling appellant's objections presents no reversible error. The fifth point of error is overruled.

The judgment of conviction is affirmed.